UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOHAN ANTONIO AGUILAR-GRATEROL, | CASE NO. 2:26-cv-00997-LK |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| WARDEN/FACILITY ADMINISTRATOR, NORTHWEST DETENTION CENTER, | |
| Respondent, | |

This matter comes before the Court on Petitioner Yohan Antonio Aguilar-Graterol's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons stated below, the Court GRANTS the petition.[1]

## I.      BACKGROUND

Aguilar-Graterol, appearing pro se,[2] is "a native and citizen of Venezuela" who entered the United States "on or about July 19, 2023." Dkt. No. 7 at 2.  He was detained that same day by the

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

[2] "Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by [incarcerated persons]." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). While the Court may not supply essential elements of a claim that were not initially pled, *Byrd v. Maricopa Cnty. Sheriffs Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011), the Court must afford "the benefit of any doubt" to the detained petitioner, *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). The Court reviews Aguilar-Graterol's petition accordingly.

Department of Homeland Security ("DHS") and released on July 20, 2023 on an Order of Release on Recognizance ("OREC") issued "[i]n accordance with Section 236 of the Immigration and Nationality Act ("INA")[.]" Dkt. No. 6-3 at 2; *see also* Dkt. No. 6-7 at 2 (Notice of Custody Determination stating that Aguilar-Graterol was "[r]eleased" "pending a final administrative determination in [his] case"). The OREC stated that he "must not violate any local, State or Federal laws or ordinances." Dkt. No. 6-3 at 2.

On the same day he was released, Aguilar-Graterol was issued a Notice to Appear ("NTA") which listed him as a noncitizen "present in the United States who has not been admitted or paroled"—as opposed to an arriving noncitizen—and stated that he was "subject to removal from the United States pursuant to . . . [section] 212(a)(6)(A)(i) of the [INA][.]" Dkt. No. 6-1 at 2.

On February 18, 2026, ICE arrested Aguilar-Graterol as ICE officers were "completing surveillance" and located his car. Dkt. No. 6-8 at 3. Officers initiated a vehicle stop and located Aguilar-Graterol in the passenger seat. *Id.* After "conduct[ing] a field investigation and determin[ing] that [Aguilar-Graterol] was in violation of immigration law," officers arrested him and took him into ICE custody. *Id.* DHS issued a warrant for Aguilar-Graterol on the same day. Dkt. No. 6-6 at 2; *see also* Dkt. No. 7 at 3. He was transported to the Northwest ICE Processing Center ("NWIPC") on February 24, 2026, where he remains. Dkt. No. 7 at 3; Dkt. No. 11 at 1.

A DHS record from the date of Aguilar-Graterol's arrest lists convictions for the offenses of "No Valid License – Never Obtained License" (three separate convictions), "Fail to Yield Right of Way," and "Speeding 60 in a 45" between November 2023 and August 2024. Dkt. No. 6-8 at 4.

On March 23, 2026, Aguilar-Graterol filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. On April 8, 2026, the United States, appearing as an "Interested

Non-Party,"[3] filed a return, Dkt. No. 5, and on April 20, 2026, Aguilar-Graterol filed a traverse, Dkt. No. 11.[4]

## II.    DISCUSSION

Aguilar-Graterol avers that his detention is unlawful because it was "imposed without constitutionally adequate procedural safeguards," is "premised on unreliable, unverified, and uncorroborated allegations contained in Department of Homeland Security records," and "has been imposed and maintained without any individualized determination of necessity, risk of flight, or danger to the community." Dkt. No. 1 at 4–6. He emphasizes that "[a]t no point has [he] been afforded a meaningful opportunity to challenge the accuracy or reliability of the information relied upon by the government in maintaining his detention." Dkt. No. 1 at 1, 3; *see also* Dkt. No. 1-1 at 2.[5] Aguilar-Graterol seeks immediate release from custody or a "prompt individualized bond hearing before a neutral decisionmaker" where the government must establish by clear and convincing evidence that he poses a risk of flight or danger to the community. Dkt. No. 1 at 8.

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody

---

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as the United States does in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[4] On April 9, 2026, the Court extended Aguilar-Graterol's deadline to file a reply. Dkt. No. 8. The order was sent to Aguilar-Graterol via USPS. The next day, presumably before the Court's order reached Aguilar-Graterol, he mailed a "Reply" and "Exhibits," Dkt. Nos. 9, 10; *see* Dkt. No. 9 at 14–15. On April 16, 2026, Aguilar-Graterol mailed a more fulsome reply, which the Court considers the operative reply. Dkt. No. 11.

[5] Aguilar-Graterol vehemently disputes the notation in the DHS record indicating that he is "a Member/Active of Tren de Aragua." Dkt. No. 6-8 at 3. However, the United States does not argue that this notation is correct or attempt to substantiate it, nor does it raise alleged gang membership in any respect in its arguments. *See generally* Dkt. No. 5.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

B.    **Aguilar-Graterol Has Established a Due Process Violation**

Like many petitions before the Court, Aguilar Graterol's petition does not meaningfully engage with the statute to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See generally* Dkt. No. 1. But the

Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Id.*; *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1. Process Required by Statute

(a) *8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

The United States avers that Aguilar-Graterol is subject to mandatory detention under 8 U.S.C. § 1225 because he is an applicant for admission. Dkt. No. 5 at 1–2, 4 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. Feb. 6, 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. Mar. 25, 2026)). Aguilar-Graterol appears to disagree, arguing that any hearing before an IJ—who previously denied his request for bond, finding that Aguilar-Graterol was subject to mandatory detention—would be "inadequate, ineffective, or futile." Dkt. No. 1 at 2; Dkt. No. 1-1 at 6; Dkt. No. 7 at 3. He contends that, contrary to the IJ's determination, he is entitled to an "individualized custody determination" to challenge the basis of his detention. Dkt. No. 1 at 3.

8 U.S.C. § 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

As this Court previously stated in *Balwan v. Bondi et al.*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *4 (W.D. Wash. Feb. 23, 2026), the Court agrees with the reasoning of *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. Sept. 30, 2025) and countless other courts across the country that have rejected the United States' argument: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)—apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–23. "[I]f the Court were to adopt the reading of section 1225 advanced by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Id.* at 1325; *see also Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *3–9 (2d Cir. Apr. 28, 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138–41 (8th Cir. 2026) (Erickson, J., dissenting). Furthermore, had Congress had wanted Section 1225(b) to have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez,* 166 F.4th at 511 (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)).

Additionally, "where a petitioner has been 'treated by [the federal government] as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)). The government has treated Aguilar-Graterol as subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until his February 2026 detention. Specifically, after Aguilar-Graterol entered the United States in July 2023, he was released on an OREC pursuant to "section 236 of the Immigration and Nationality Act," Dkt. No. 6-3 at 2, which is codified at 8 U.S.C. § 1226, *see Diouf v. Mukasey*, 542 F.3d 1222, 1227 (9th Cir. 2008). He was living freely within the community with his family until he was arrested. *See* Dkt. No. 1-1 at 3; *see also id.* at 18–20; Dkt. No. 11 at 22–24, 29–31, 37–39, 40–42, 44–45.

As discussed above, unlike noncitizens detained under 8 U.S.C. § 1226(a), noncitizens detained under 8 U.S.C. § 1225(b) are subject to mandatory detention unless they are temporarily paroled into the United States "for urgent humanitarian reasons or significant public benefit[.]" *Jennings*, 583 U.S. at 283 (quoting 8 U.S.C. § 1182(d)(5)(A)). Nothing in the record prior to Aguilar-Graterol's 2026 arrest suggests that his release was pursuant to Section 1225(b). Indeed, as discussed above, he was released on his own recognizance pursuant to Section 1226. Dkt. No. 6-3 at 2. And on the Form I-862, DHS selected the checkbox indicating that he is "an alien present in the United States who has not been admitted or paroled" and not the checkbox designating him "an arriving alien." Dkt. No. 6-1 at 2. These facts demonstrate that his detention is governed by 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225.

As noted above, Aguilar-Graterol does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) and its implementing regulations, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925,

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7

929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). The Court addresses those safeguards below.

(b)   *Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his

employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2. Due Process Requirements

As discussed above, Aguilar-Graterol contends that his Fifth Amendment rights were violated by his re-detention without "constitutionally adequate procedural safeguards." Dkt. No. 1 at 4. He alleges that his detention "is premised on unreliable, unverified, and uncorroborated

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

allegation[s]" and "has been imposed and maintained without any individualized determination of necessity, risk of flight, or danger to the community" and without any opportunity for Aguilar-Graterol to "challenge the accuracy or reliability of the information relied upon by the government in maintaining his detention." *Id.* at 1, 3–6. The United States argues that Aguilar-Graterol "is not entitled to additional procedural safeguards" because he has "no entitlement to bond[.]" Dkt. No. 5 at 7.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge. Id.* at 1179–80.

(a) *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 10

shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Aguilar-Graterol in 2023, DHS released him on his own recognizance. Dkt. No. 6-3 at 2. He was living freely within the community with his family until his arrest. *See* Dkt. No. 1-1 at 3; *see also id.* at 18–20; Dkt. No. 11 at 22–24, 29–31, 37–39, 40–42, 44–45. And he spent the vast majority of his over two years in the United States released on an OREC. Dkt. No. 6-3 at 2. In addition, the United States issued him an Employment Authorization valid from August 14, 2024 to August 19, 2029. Dkt. No. 1-1 at 15. He worked and exhibited professionalism and dedication in his jobs. Dkt. No. 1-1 at 33 (letter from Employbridge); Dkt. No. 10 at 8–9 (letter from Celina Negreros); *id.* at 16 (letter from Jose Negreros); *id.* at 22 (letter from Ellen Prestiwisch). He has established close friendships, including a friend who agreed to sponsor him, pay any bond, and assume responsibility for him. Dkt. No. 10 at 12; *see also id.* at 20 (letter from Steefany Roa). He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

(b)  *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Aguilar-Graterol has a weighty private interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Aguilar-Graterol has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing at the outset of detention. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Aguilar-Graterol.

Turning to the second factor, Aguilar-Graterol argues that detention without notice and a hearing "is arbitrary" and "permit[s] the government to deprive an individual of liberty based on untested, unreliable, or uncorroborated allegations[.]" Dkt. No. 1 at 5. Indeed, because the Department of Homeland Security purported to detain Aguilar-Graterol under 8 U.S.C. § 1225(b), he was stripped of his right to a bond hearing. *See* Dkt. No. 5 at 6 ("Petitioner is Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(1)[.]"). The United States also makes no attempt to show that Aguilar-Graterol's OREC was timely revoked by an appropriate official. "The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole,

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 12

unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion." *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *24 (D. Nev. Nov. 17, 2025). The risk of erroneous deprivation is also significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations"). Because the above-described procedures operate to "prevent[ ] arbitrary revocations and ensure[ ] that detention decisions rest[ ] on individualized assessments of changed circumstances rather than categorical assumptions," *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *5 (W.D. Wash. Oct. 7, 2025), adherence to the government's procedures would have mitigated the risk of erroneous deprivation. *See also Saravia*, 905 F.3d 1137 (upholding district court's classwide preliminary injunction requiring a prompt hearing for noncitizens suspected of gang activity at which the government would be required to demonstrate that changed circumstances justified arrest and detention). This factor weighs in favor of Aguilar-Graterol.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from

dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, that interest is not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. This factor too weighs in favor of Aguilar-Graterol.

Under *Mathews*, the Court finds that the United States failed to provide Aguilar-Graterol with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

### III.    CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED, and the Court ORDERS as follows:

1.    Respondent shall immediately release Aguilar-Graterol from custody on the terms of his most recent OREC or other terms consistent with Section 1226(a);

2.    The parties shall file a Joint Status Report by April 30, 2026, confirming that Aguilar-Graterol has been released.

Dated this 29th day of April, 2026.

Lauren King
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 14